IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MARYLAND

                                  :
DANIEL M. JOHNSON
                                  :

     v.                           :  Civil Action No. DKC 18-2152

                                  :
MARYLAND DEPARTMENT OF LABOR,
LICENSING, AND REGULATION, et al.:

                       **MEMORANDUM OPINION**

     Presently pending and ready for resolution in this employment case is the motion for partial dismissal, or in the alternative, for summary judgment, filed by Defendants Maryland Department of Labor Licensing & Regulation ("DLLR") and Kelly M. Schulz, in her official capacity as Secretary of DLLR (jointly "Defendants"). (ECF No. 11). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion will be granted in part and denied in part.

I.   **Background**

     Plaintiff, Daniel M. Johnson ("Plaintiff"), began working for DLLR in 2001. (ECF No. 3, at 3). In January of 2016, Plaintiff "informed Defendants that he was losing a substantial amount of vision due to diabetes." (*Id.*). "At this time, he began the interactive process of requesting accommodations." (*Id.*). The process continued through September of 2016. (*Id.*). At some

unspecified point DLLR "requested that Plaintiff . . . visit a physician to determine whether he was fit for duty." (*Id.*). "Ultimately, that physician determined that [Plaintiff] would be unable to perform the essential functions of his job due to the lack of normal eye sight." (*Id.*, at 3-4). "Based on the . . . advice of the physician, [DLLR] placed [Plaintiff] on involuntary leave which became unpaid leave after June 20, 2016." (*Id.*, at 4). Plaintiff continued "the interactive process and requested various accommodations." (*Id.*). DLLR "denied the accommodations requested by [Plaintiff][.]" (*Id.*). "By October of 2016, Plaintiff . . . was forced to take disability retirement because he was no longer being paid and accommodations had not been granted to permit him to perform the essential functions of his job." (*Id.*, at 4-5).

Plaintiff "filed a charge of employment discrimination with the Baltimore office of the Equal Employment Opportunity Commission" ("EEOC") on December 15, 2016, "alleging employment discrimination based on [his] disability, blindness." (ECF No. 17-2, at 1). Plaintiff's charge was transferred to the Maryland Commission on Civil Rights ("MCCR") through a worksharing agreement between the EEOC and MCCR on April 24, 2017. (ECF No. 11-2). MCCR sent Plaintiff a letter on June 21, 2017, acknowledging that Plaintiff "elected to have the case forwarded directly to an investigative unit to be scheduled for a Fact

Finding Conference." (ECF No. 17-1, at 9). The letter further stated that:

> Pursuant to § 20-1013 of the State Government Article, a Complainant also has the ability to commence a civil action against the Respondent on his or her own behalf in an appropriate State court with respect to an alleged discriminatory employment practice that forms the basis of a charge issued by the Commission. The Complainant may commence such civil action if: (1) the Complainant initially filed a timely administrative charge or complaint under federal, State, or local law alleging an unlawful employment practice by the respondent; (2) at least 180 days have elapsed since the filing of the administrative charge or complaint; and (3) the civil action is filed within 2 years after the alleged unlawful employment practice occurred.

(*Id.*). A fact-finding conference was held on April 5, 2018. (ECF No. 17-2, at 2). Plaintiff's counsel was not able to attend the fact-finding conference in person and instead participated through Plaintiff's "cell phone and use [of] its speaker phone capacity." (*Id.*). Plaintiff states in his declaration that his counsel "attempted to participate and ask questions" but the investigator "informed [Plaintiff's counsel] that he could not participate in any way and that only those personally involved in the case could speak." According to Plaintiff, the investigator unfairly "did allow [DLLR's counsel] to participate in the Conference" and DLLR's counsel "took the lead on explaining the Department's side of the case." When Plaintiff "challenged the investigator as to why [DLLR's counsel] could participate and [Plaintiff's counsel] could

not, the investigator said that [DLLR's counsel] had been advising [DLLR] during the time period prior to [Plaintiff's] termination and was involved with the facts and circumstances involved with [Plaintiff's] employment situation." Plaintiff states that his counsel similarly advised him during the time period prior to his termination. Plaintiff notes that he attended "a few meetings with [DLLR] where" accommodations and a return to work were discussed and "[DLLR's counsel] was not present[.]" During the conference, Plaintiff's counsel "attempted to speak a couple of times to assist [Plaintiff], and the investigator advised him that if he continued, she would end the [c]onference." Defendants contend in a declaration of Sarah P. Harlan, who represented DLLR at the conference, that "counsel for Plaintiff attempted to make evidentiary objections as if the conference were a formal hearing subject to the rules of evidence" and that the "[i]nvestigator advised Plaintiff's counsel that he was not permitted to participate in such a manner." (ECF No. 11-2, at 3). When Plaintiff "confirmed that [his counsel] would not be allowed to participate in [the] [fact-finding conference] in any way, [Plaintiff] decided to leave because . . . [DLLR] would be allowed to rely upon its lawyer and have her participate directly in the

[c]onference, and [Plaintiff] would not have [the] benefit of [his counsel]."

Plaintiff's complaint was "administratively closed" due to a "failure to cooperate" on April 5, 2018. (ECF No. 11-2, at 13). Plaintiff "received a Right to Sue letter from the [EEOC] on April 24, 2018." (ECF Nos. 3, at 2; 11-2, at 15).

Plaintiff commenced this suit by filing a complaint on July 13, 2018 (ECF No. 1), and an amended complaint on July 31, 2018 (ECF No. 3), asserting claims of disability discrimination under Titles I and II of the Americans with Disabilities Act, 43 U.S.C. § 12101, *et seq.* (the "ADA"), the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't § 20-601, *et seq.* (the "FEPA"), and Section 504 of the Rehabilitation Act, 29 U.S.C. § 701, *et seq.* (the "Rehabilitation Act"). Defendants filed a motion for partial dismissal, or in the alternative, for summary judgment (ECF No. 11), and a partial answer to the amended complaint (ECF No. 12) on November 20, 2018. Plaintiff responded on December 11, 2018 (ECF No. 17), and Defendants replied on December 20, 2018 (ECF No. 21).

**II. Standard of Review**

The issues raised implicate multiple standards of review. As will be discussed, the Title II ADA claim and the claim for monetary damages under Title I will be assessed pursuant to Federal Rule of Civil Procedure 12(b)(6). The argument concerning failure

5

to exhaust administrative remedies under the FEPA and Title I of the ADA, as to which both parties rely on materials outside the four corners of the complaint, will be reviewed under Federal Rule of Civil Procedure Rule 56(a).[1]

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quotation omitted). "A court must consider all well-pleaded allegations in a complaint as true, *see Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe factual allegations in the

---

[1] Defendants suggest that failure to exhaust results in a lack of subject matter jurisdiction, and should be analyzed under Fed.R.Civ.P. 12 (b)(1). "In recent years, the Supreme Court repeatedly has cautioned courts not to 'confuse[] or conflate[]' subject-matter jurisdiction, on the one hand, with the 'essential ingredients of a federal claim for relief,' on the other." *Stewart v. Iancu*, 912 F.3d 693, 700 (4th Cir. 2019) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 503 (2006)). Contrary to Defendants' assertion, review under Rule 12(b)(1) is not appropriate. Rule 12(b)(1) review for failure to exhaust administrative remedies is limited, at most, to complete failures, such as a plaintiff's failure to file a charge with the EEOC before bringing suit in federal court. *See, e.g., Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009); *Stewart*, 912 F.3d at 698 n.1. Other issues of exhaustion, such as untimely filing of an administrative charge, are not jurisdictional bars to suit. *See, e.g., Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) ("filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit.").

light most favorable to the plaintiff, *see Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). Nevertheless, a court is not required to accept as true "a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

A motion for summary judgment will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Once a properly supported motion for summary judgment is filed, the nonmoving party is required to make a sufficient showing on an essential element of that party's claim as to which that party would have the burden of proof to avoid summary judgment. *Celotex*, 477 U.S. at 322–23.

Summary judgment is appropriate under Federal Rule of Civil Procedure Rule 56(a) when there is no genuine dispute as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson*, the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. at 249. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

7

*Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson*, 477 U.S. at 252.

A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted). Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

**III. Analysis**

    **A.   Title I & II ADA Claims**

Defendants and Plaintiff agree that two claims should be dismissed for failure to state a claim. Defendants argue that "Plaintiff's Title I ADA claim for monetary damages must be dismissed because it is barred by the Eleventh Amendment to the United States Constitution and the doctrine of sovereign immunity." (ECF No. 11-1, at 2). "In addition," Defendants argue "the Title II ADA claim must be dismissed because Title II is not a vehicle for public employment discrimination claims." (*Id.*). In his response, Plaintiff agrees that these claims should be dismissed because "[a]fter reading the case law, Plaintiff acknowledges that Defendants are correct[.]" (ECF No. 17, at 2). As now acknowledged by both parties, the caselaw is clear and analysis need not be extensive. Plaintiff's Title I ADA claim for monetary damages must be dismissed because it is barred by the Eleventh Amendment to the United States Constitution and the doctrine of sovereign immunity. *See Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356 (2001). Similarly, Plaintiff's Title II ADA claim must be dismissed because Title II is not a vehicle for public employment discrimination claims. *Reyazuddin v. Montgomery County*, 789 F.3d 407, 421 (4th Cir. 2015) ("Title II unambiguously does not provide a vehicle for public

employment discrimination claims."). Accordingly, those claims will be dismissed.

   **B.   Failure to Exhaust Administrative Remedies**

   Defendants argue that Plaintiff's claims must be dismissed for failure to exhaust administrative remedies because the "EEOC's *pro forma* issuance of a right to sue letter to a charging party who either fails to cooperate and/or abandons his claim does not constitute administrative exhaustion." (ECF No. 21, at 2). As noted in footnote one, Defendants are wrong to pose the issue as one of subject matter jurisdiction. In fact, even the Tenth Circuit now agrees that failure to exhaust is not a matter of subject matter jurisdiction, but rather an affirmative defense to be raised by a defendant. *Lincoln v. BNSF Ry.Co.,* 900 F.3d 1166, 1185-86 (10th Cir. 2018). Thus, it is appropriate to assess the matter under Rule 56.

   Defendants specifically argue that "Plaintiff failed to exhaust his administrative remedies when he . . . abandoned the fact-finding conference and requested closure of his charge[.]" (*Id.*, at 5). Plaintiff argues that his claim should not be dismissed because he "has an unequivocal right to remove [his] EEOC charge after 180 days from the time that he filed it[,]" and that Plaintiff "did not participate in bad faith during the Fact Finding Conference and in fact it is [MCCR] which conducted the Conference in a manner precluding [Plaintiff] from fairly and

10

meaningfully participating and thus arguably violat[ed] his due process rights." (ECF No. 17, at 3).

The ADA prohibits discrimination and retaliation against qualified individuals on the basis of disability. *See* 42 U.S.C. §§ 12112, 12203(a) (2006). Because the ADA incorporated the procedural requirements of Title VII, "[b]efore a plaintiff has standing to file suit . . . he must exhaust his administrative remedies by filing a charge with the EEOC." *Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002); *see* 42 U.S.C. § 12117(a). The FEPA requires the same. *See Clarke v. DynCorp Int'l LLC*, 962 F.Supp.2d 781, 786-87, 790 (D.Md. 2013); *Williams v. Silver Spring Volunteer Fire Dep't*, 86 F.Supp.3d 398, 408 n.1 (D.Md. 2015) ("FEPA is the state law analogue of Title VII and its interpretation is guided by federal cases interpreting Title VII."). The exhaustion requirement serves dual purposes: providing notice to the employer and promoting conciliation between the parties. *See Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005).

The United States Court of Appeals for the Fourth Circuit has not addressed whether a state employee is obligated to conciliate in good faith during a fact-finding conference with the EEOC, or by extension the MCCR, and none of the cases Defendants cite are

11

squarely on point with the case at bar.[2] Defendants chiefly rely on *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005), *abrogated on other grounds by Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166 (10th Cir. 2018), to argue that that there is an obligation for state employees to conciliate in good faith. *Shikles* and the other cases cited, however, are readily distinguishable from the current case.[3] In *Shikles*, the Tenth

---

[2] None of the cases Defendants rely upon support the proposition that a plaintiff fails to exhaust his administrative remedies where there is a dispute over his non-cooperation with an underlying investigation — notwithstanding the issuance of a right to sue letter by the EEOC. *See Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 406 (4th Cir. 2013) (plaintiff's claims within intake questionnaires and letters to the EEOC are outside of the federal courts jurisdiction if not contained within the EEOC charge); *Lorenzo v. Rumsfeld*, 456 F.Supp.2d 731, 734 (E.D.Va 2006) (failure to contact EEO counselor within statutory time limit may be grounds for dismissal); *Ramirez v. Bolster & Jeffries Health Care Group, LLC*, 277 F.Supp.3d 889, 904-05 (W.D.Ky 2017) (plaintiff failed to exhaust administrative remedies due to refusal to verify EEOC charge, thus frustrating the EEOC's "responsibility to act as an 'efficient conciliator.'") (internal quotation omitted); *Brown v. Snow*, 440 F.3d 1259, 1263 (11th Cir. 2006) (applying the Eleventh Circuit Court of Appeals' "good faith effort" standard but finding insufficient record information to determine whether plaintiff exhausted administrative remedies); *Austin v. Winter*, 286 Fed.Appx. 31 (4th Cir. 2008) (unreported decision in which the court noted in *dicta* that "[w]hile private sector Title VII cases do not require a claimant to cooperate in the administrative process, the same is not true in cases involving federal employees.").

[3] The only similar case Defendants cite with precedential value is *Woodard v. Lehman*, 717 F.2d 909, 915 (4th Cir. 1983). *Woodard*, however, is also distinguishable. In *Woodard*, the Fourth Circuit found that plaintiffs did not exhaust administrative remedies upon refusal to provide requested information clarifying the critical question of whether a discriminatory act allegedly

Circuit found that the complainant failed to exhaust administrative remedies where the totality of non-cooperation indicated that he "failed to cooperate with the EEOC at all." *Id.* at 1317. The complainant did not make "himself available for a telephone interview," and failed "to provide the EEOC with documents that it requested, or to explain why he could not provide such documents." In addition, his "attorney did not respond at all to several of the EEOC's attempts to contact him." Here, Plaintiff cooperated with the EEOC, and by extension the MCCR, for 477 days before a dispute arose as to whether Plaintiff acted in good faith during the fact-finding process. It is a far stretch to say that Plaintiff "failed to cooperate with the EEOC at all."

Further, it is not at all clear that the Tenth Circuit is correct to delve into the level of cooperation with the conciliation effort for non-federal employees. For example, Judge Richard Posner of the United States Court of Appeals for the Seventh Circuit aptly detailed the fault in the Tenth Circuit's reasoning in *Doe v. Oberweis Dairy*, 456 F.3d 704 (2006). A lengthy quotation follows:

> To facilitate its investigation during the 180-day period, the Commission requires the complainant to cooperate, including by participating in a factfinding conference with Commission staff. 29 C.F.R § 1601.15(c). If

---

had occurred within the relevant time frame, and were unable to meet that requirement before the district court.

13

the complainant fails to cooperate and the failure prevents the Commission from resolving the charge, the Commission can dismiss it. § 1601.18(b).  Although neither the regulations nor Title VII makes cooperation a condition of the complainant's being able to sue, the Tenth Circuit has decided that failure to cooperate in good faith is a bar to suit. *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304 (10th Cir. 2005). (*Shikles* was a suit under the Age Discrimination in Employment Act, but most of the court's discussion is of Title VII.)  The Commission has expressed its disagreement with the Tenth Circuit's position in a series of amicus curiae briefs, one filed with us in this case.

*   *   *

The Tenth Circuit acknowledged the Supreme Court's "admonition that no requirements beyond those in the statute should be imposed," *Shikles v. Sprint/United Mgmt. Co.*, *supra*, 426 F.3d at 1315; *see Mohasco Corp. v. Silver*, 447 U.S. 807, 816 n.19 (1980); *McDonnell Douglas Corp. v. Green*,[] 411 U.S. [792,] 798-99 [(1973)]; *Eichman v. Linden & Sons, Inc.*, 752 F.2d 1246, 1249 (7th Cir. 1985) — but it imposed them anyway. So the Tenth Circuit's gloss on Title VII is confessedly adventurous, and this will distress originalists.  It is also in severe tension with the Supreme Court's recent observation, concerning the "exhaustion" provisions in both Title VII and the Age Discrimination in Employment Act, that "neither of these provisions makes reference to the concept of exhaustion, and neither is in any sense an exhaustion provision." *Woodford v. Ngo*, 548 U.S. 81 (2006). Title VII imposes procedural requirements as a precondition to bringing a suit in federal court that is an original proceeding rather than one to review agency action. . . . Title VII does not incorporate anything like the full apparatus of exhaustion, an apparatus designed as we have noted for cases in which judicial review of an adjudication or a rule is sought.  We shall

continue for convenience to refer to Title VII's "exhaustion" requirements, but they must not be confused with the requirements for APA-type exhaustion.

The decisive objection to the Tenth Circuit's position is that if widely adopted it would protract and complicate Title VII litigation, and with little or no offsetting benefit if we are right in thinking that the problem of complainants who by failing to cooperate with the Commission thwart the conciliation process and as a result thrust additional cases on the federal courts is a slight one. In *Shikles* the complainant's lack of cooperation could be established with unusual ease: he refused to be interviewed, failed to provide the EEOC with the documents that it requested, failed to explain why he could not provide them, and his lawyer failed to respond to several of the EEOC's efforts to reach him. In the next case, however, the complainant might sit for the interview but refuse to answer questions. In the case after that he would answer questions but do so cryptically. And in a subsequent case he would answer questions fully but fail to bargain in good faith over the employer's offer of a settlement.

For the "cooperation" theory of exhaustion requires not merely pro forma compliance with the Commission's regulations but, as *Shikles* put it, a "good faith effort at cooperation." 426 F.3d at 1317. We know from cases under the National Labor Relations Act, which requires unions and employers to bargain in good faith, 29 U.S.C. § 158(d); *Litton Financial Printing Division v. NLRB*, 501 U.S. 190, 198-99 (1991), how difficult it is to enforce such a duty, *ConAgra, Inc. v. NLRB*, 117 F.3d 1435, 1447 (D.C. Cir. 1997) (concurring opinion), because it jostles uneasily with the right (*see* 29 U.S.C. § 158(d); *H.K. Porter Co. v. NLRB*, 397 U.S. 99, 106-08 (1970)) of each party to a labor negotiation to refuse an offer by the other even if a neutral observer would think it a

15

> fair, even a generous, offer. *Huck Mfg. Co. v. NLRB*, 693 F.2d 1176, 1187 (5th Cir. 1982); *Eastern Maine Medical Center v. NLRB*, 658 F.2d 1, 10 (1st Cir. 1981); *NLRB v. Milgo Industrial, Inc.*, 567 F.2d 540, 542–43 (2d Cir. 1977) (Friendly, J.); *see also PSI Energy, Inc. v. Exxon Coal USA, Inc.*, 17 F.3d 969, 974 (7th Cir. 1994). To allow employers to inject such an issue by way of defense in every Title VII case would cast a pall over litigation under that statute.

*Oberweis Dairy*, 456 F.3d at 709-11.

Defendants also rely on *Mach Mining v. EEOC*, 135 S.Ct. 1645 (2015), and its "central holding," that "the administrative process may not be treated as a sham or a mere formality, or otherwise disregarded." (ECF No. 11-1, at 15). Defendants incorrectly argue that *Mach Mining* overrules *Oberweis Dairy*. *Mach Mining* concerned the Title VII requirement that the EEOC attempt conciliation of a discrimination charge prior to filing a law suit, and the Seventh Circuit's determination "that alleged failures by the EEOC in the conciliation process simply do not support an affirmative defense for employers charged with employment discrimination." *EEOC v. Mach Mining*, 738 F.3d 171, 184 (7th Cir. 2013). The Supreme Court, in reversing the Seventh Circuit, stated that "The EEOC must try to engage the employer in some form of discussion (whether written or oral) so as to give the employer an opportunity to remedy the allegedly discriminatory practice." *Mach Mining*, 135 S.Ct. at 1656. As Defendants concede, the "facts of *Mach Mining* are obviously not on all fours with the instant

16

case.  *Mach Mining* defines what administrative efforts the EEOC must undertake before it initiates litigation against an employer. It does not say what a private plaintiff must do to properly meet his or her exhaustion requirements."  (ECF No. 11-1, at 15).  This distinction is critical.  The Court expressly rejected the argument that courts should "do a deep dive into the conciliation process" and "consider whether the EEOC has 'negotiate[d] in good faith' over a discrimination claim."  *Mach Mining*, 135 S.Ct. at 1653. The Court further noted that Title VII is "a law that treats the conciliation process not as an end in itself, but only as a tool to redress workplace discrimination."  *Id.* at 1654.  The Court also expressly criticized other decisions that have "not enforce[d] the law Congress wrote, but" rather "impose[d] extra procedural requirements."  *Id.* at 1654-55.  In coming to this conclusion, the Court walked through the plain language of the statutory requirements.  *Id.* at 1649-50; *see also Oberweis Dairy*, 456 F.3d at 708-09 (detailing the limited statutory requirements a Title VII plaintiff must meet to file suit in federal court).  A similar reading of the statute is appropriate here.

The statutory text does not support Defendants' argument. The plain language of 42 U.S.C. § 2000e-5(b) requires the EEOC to attempt conciliation prior to filing suit in federal court.  ("If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission

17

shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion."). § 2000e-5 does not place an obligation of good faith conciliation on the allegedly aggrieved complainant. A plaintiff is not statutorily required to prove what efforts, if any, he or she made to conciliate. Indeed, § 2000e-5(b) severely restricts information concerning conciliation. *Id.* ("Nothing said or done during [conciliation] may be . . . used as evidence in a subsequent proceeding without . . . written consent[.] Any person who makes public information in violation of this subsection shall be fined not more than $1,000 or imprisoned for not more than one year, or both."). Accordingly, it is not clear, as a matter of law, that a plaintiff must do more than file a timely claim, and receive a right to sue notice, in order to satisfy the statute.

In any event, the facts here do not establish conclusively that Plaintiff failed to cooperate. He clearly did not wholly fail to cooperate with the EEOC. He filed a charge with the EEOC, thus putting the employer on notice of the alleged violation and affording the parties the opportunity potentially to resolve the matter outside of court. He cooperated with the EEOC for 477 days, and awaited the EEOC's right to sue letter. Even if it is appropriate to delve into the "good faith" of a plaintiff in the conciliation process, the record at this time contains material

18

disputes of fact and does not support the grant of summary judgment to Defendants on this issue.

## IV. Conclusion

For the foregoing reasons, the motion for partial dismissal of amended complaint, or in the alternative for summary judgment, filed by Defendants Maryland Department of Labor Licensing & Regulation and Kelly M. Schulz, in her official capacity as Secretary of DLLR, will be granted in part and denied in part. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge
